**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DEBORAH CLARIDY** | * | |
|    3310 Devonshire Drive | | |
|    Baltimore, Maryland  21215 | * | |
|    **Plaintiff** | * | |
|        v. | * | CIVIL NO. _____ |
| **JOHN ANDERSON** | * | |
|    110 N. Calvert Street | | |
|    Baltimore, Maryland  21202 | | |
| | * | |
|    **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **COMPLAINT**

### A.  INTRODUCTION

1. This is an employment civil rights case involving deprivation of rights under the First Amendment to the U. S. Constitution made actionable pursuant to 42 U.S.C. Section 1983.

2. Deborah Claridy ("Claridy") Plaintiff, is a citizen of the State and District of Maryland who resides in the City of Baltimore, Maryland. She is a sworn member of the Baltimore City Sheriff's Office, an agency of the State of Maryland, with an office and principal place of business in the City of Baltimore. Claridy is a Deputy Sheriff and a Lieutenant.

**3.** **John Anderson ("Anderson") Defendant, is a citizen of the State and District of Maryland who resides in the City of Baltimore, Maryland. He is a sworn member of the Baltimore City Sheriff's Office, an agency of the State of Maryland, with an office and principal place of business in the City of Baltimore. Anderson is the Sheriff, an elected official, who is the head of the Sheriff's Office. He is being sued in his individual capacity.**

**4.** **This Court has jurisdiction pursuant to 28 U.S.C. Section 1331.**

**5.** **Venue is proper pursuant to 28 U.S.C. Section 1391.**

**B.     BACKGROUND**

**6.** **Claridy has been employed as a Deputy Sheriff since March 1990.**

**7.** **Following the initiation of an employment discrimination complaint and suit which were settled, Claridy was promoted by Anderson to Sergeant in 2001.**

**8.** **Claridy was promoted by Anderson to Lieutenant in 2003.**

**9.** **As of 2010, Claridy was the highest ranking female sworn deputy sheriff. She primarily handled administrative functions in the Sheriff's Office including payroll, accounting, leave, budget and fiscal and related duties. She supervised an administrative staff. She also performed duties as a law enforcement officer including courtroom security, service of process and making arrests. She reported to the Chief Deputy Sheriff who is the second in command of the office. Her job performance was satisfactory.**

**10.** **In January 2010, Claridy met with Anderson and informed him that she intended to run in the 2010 Primary Election in the City of Baltimore for the office of Sheriff.**

**11.** **On her own time, and after work hours, Claridy began raising money for her campaign, organizing supporters and volunteers, going to campaign related events and**

speaking out at those events and to the media on matters and issues of public concern including the following:

(a) Claridy spoke about the need for the Sheriff to recruit and hire more minorities and women as sworn deputy sheriffs who have law enforcement responsibilities. Claridy was responding to and addressing the concerns expressed by several advocacy groups that minority recruitment of sworn deputy sheriffs for the office had not been effective;

(b) Claridy spoke about the need for the Sheriff to promote more women in the Sheriff's Office to supervisory and management positions as sworn deputy sheriffs to the ranks of Sergeant, Lieutenant, Captain and Major. Claridy was responding to concerns expressed by advocacy groups and female deputies in the office about the lack of promotions of women to supervisory and management ranks as sworn deputies;

(c) Claridy spoke about the need for the Sheriff to seek funding to expand the capacity of the office to become the principal intake agency for domestic violence complaints and cases. Claridy was responding to citizen complaints about the insensitivity of the Baltimore City Police Department handling such matters as the principal intake agency, and the perception that the Sheriff, who is elected, would be more sensitive to women in handling such matters;

(d) Claridy spoke about the need for the Sheriff to increase the number of sworn deputies for courtroom security work. Claridy was responding to complaints by courthouse personnel that the current staff of civilian personnel needed to be reduced and replaced by sworn deputies who are trained law enforcement officers to improve public safety in the courtrooms;

**(e)** **Claridy spoke about the need for the Sheriff to seek increased funding in order to expand training so that sworn deputies could enhance their skills and assist law enforcement officials from other agencies with homeland security duties throughout the City of Baltimore. Claridy was responding to concerns expressed by advocates and community groups that the law enforcement agencies in the City of Baltimore lacked sufficient personnel to handle homeland security threats and incidents of violence in the City;**

**(f)** **Claridy spoke about the need for the Sheriff to seek legislation to improve the foreclosure process for homeowners in the City of Baltimore so that the office could provide more information to homeowners about the process and refer them to other agencies and nonprofit organizations for support services. Claridy was responding to concerns expressed by community groups that the Sheriff's Office, which enforces all court process for foreclosures, did not provide enough information to affected citizens about the process;**

**(g)** **Claridy spoke about the need for the Sheriff to upgrade and improve the technology used for courthouse security. Claridy was responding to complaints by courthouse personnel and citizens that current technological devices for security was outdated and ineffective; and,**

**(h)** **Claridy spoke about the need to reduce overtime expenditures. Claridy was responding to concerns expressed in the media about overtime abuse.**

**12.** **Between January 2010 and July 2010, Claridy conducted her campaign on a part-time basis and spoke out on issues of public concern at campaign events and to the media.**

**During that period, she continued to perform her administrative duties and her other duties as a sworn deputy sheriff. Anderson as well as several other candidates for the Office of Sheriff also were campaigning, attending campaign events and speaking to the media during that period. Claridy's job performance continued to be satisfactory. She continued to have her full police powers. No disciplinary charges were filed against her.**

**13.    Claridy filed her certificate of candidacy for the Office of Sheriff in May 2010. Prior to the deadline date for the filing or withdrawal of a certificate of candidacy in July 2010, Anderson met with Claridy. He offered to promote her to the rank of Major after the election if she dropped her candidacy for office. She declined the offer. During an appearance on a talk radio program, Anderson openly and candidly admitted that he offered the promotion to Claridy if she dropped her candidacy.**

**14.    Between the filing deadline in July 2010 and the September 2010 Primary Election, Claridy took leave and conducted her campaign on a full time basis. She continued to speak out on issues of public concern as stated herein at campaign events and to the media. Anderson as well as several other candidates for the Office of Sheriff also were campaigning, attending campaign events and speaking to the media during that period. In August and September 2010, Anderson appeared on several radio talk programs. He was asked by the hosts whether he was concerned that Claridy was running for the Office of Sheriff. He said no because she had a constitutional right to run for office. Claridy continued to have her full police powers, and no disciplinary charges were filed against her during that period.**

**15.    Anderson won the September 2010 Primary Election for the Office of Sheriff. Claridy came in second place.**

5

**16.     Claridy returned to full time work after the September 2010 primary election. Upon her return, on or about September 23, 2010, Claridy was told by a civilian Major that Anderson removed Claridy from handling administrative duties, and assigned her to do what was called "daily courtroom checks." The civilian Major previously was employed as a civilian office assistant who was under the supervision of Claridy. The civilian had no law enforcement credentials or experience, and was not a sworn law enforcement officer.**

**(a)     Prior to being given the assignment, no such assignment ever existed in the Sheriff's Office.**

**(b)     Claridy was assigned to go to each courtroom each day and make a report of what she observed.**

**(c)     She was not allowed to speak to or supervise any Sheriff's Office personnel in the courtrooms.**

**(d)     She was not allowed to exercise her law enforcement or police powers in the courtrooms.**

**(e)     She had no staff.**

**(f)     There was no job description for her assignment.**

**(g)     There was no orientation for her assignment.**

**(h)     There was no training for the assignment.**

**(i)     She could not get information about the duties and responsibilities for her assignment from the civilian Major, or from her chain of command which included sworn deputies with the ranks of Captain, Major, Chief Deputy, or from Anderson, other than to go to the courtrooms, observe what transpired in the courtrooms and make reports of her observations.**

**17.**     **Claridy performed her new assignment diligently for 8 months from September 23, 2010 to May 24, 2011, and filed her reports. She was not given any oversight or direction concerning her assignment by anyone in her chain of command including Anderson. She was not given any feedback about her assignment or her reports by anyone in her chain of command including Anderson.  She was not given any job performance evaluations by anyone in her chain of command including Anderson.**

**18.**     **On May 24, 2011, Anderson directed that Claridy be served with 17 administrative disciplinary charges and she was served with such charges. She was served with the charges, and suspended from duty. Her police powers also were suspended. Copies of the charges are attached hereto as Exhibit 1, and incorporated herein fully by reference.**

**(a)**     **Charges 1-5 refer to an alleged improper use of a photograph of Claridy in a official uniform as a part of her political campaign. The charges were patently false. The photograph in question was published in a sheriff's association journal in the public domain. It was taken in 2003, seven years before the campaign. The uniform was not an official uniform. The use of the photograph was protected by the First Amendment, and should not have been the basis of disciplinary charges.**

**(b)**     **Charges 6-9 refer to comments Claridy made on two radio programs during the campaign purportedly critical of the Sheriff and the Sheriff's Office. Those comments were protected by the First Amendment, and should not have been the basis of disciplinary charges.**

**(c)**     **Charges 10-11 refer to the posting of a website with comments critical of the Sheriff and the Sheriff's Office. The website and the comments were protected by the First Amendment, and should not have been the basis of disciplinary charges.**

**(d)** **Charges 12-17 refer to alleged failure by Claridy to perform the daily courtroom checks, and to submit reports. The charges are patently false. Claridy performed the checks, and completed the reports. The reports were placed in a bin. They were never picked-up or reviewed.**

19. **Three months later, on August 30, 2011 Claridy appeared before a trial board on the charges. The charges were dismissed.**

20. **Claridy was scheduled to return to work on September 6, 2011. Anderson directed that Claridy be recharged with all charges except the charges related to Claridy's campaign. On September 6, 2011, Claridy was served with Charges 1-6, which repeated the prior Charges 12-17 which referred to alleged failure by Claridy to perform the daily courtroom checks, and to submit reports. Copies of Charges 1-6 are attached hereto as Exhibit 2, and incorporated herein by reference. The prior charges covered the period September 23, 2010 to December 29, 2010. The supposed new charges covered the period September 23, 2010 to May 23, 2011. The charges are patently false. Claridy performed the checks, and completed the reports. The reports were placed in a bin. They were never picked-up or reviewed. Based on the new charges, Anderson directed that Claridy's suspension from duty be continued, and that the suspension of her police powers be continued.**

21. **Eight months later, on or about March 8, 2012, Anderson directed that Claridy return to work. Instead of reporting to the civilian Major, Anderson directed that she report to a Major who was a sworn deputy. Anderson directed that she be given a new assignment. Her new assignment included tasks such as reading and responding to emails, handling  routine paperwork normally handled by civilian clerks, checking the doors to the**

courthouses, checking the doors to the courtrooms, checking the hand sanitizers in the courthouses, checking the telephones to make sure that they were operational and going to the prisoner lock-up in the courthouses to count prisoners; tasks normally handled either by civilian personnel or junior deputies; not tasks assigned to or handled by a sworn deputy who like her held the rank of lieutenant.

22.   Anderson directed that Claridy's police powers be suspended until the "resolution of [her] Internal Affairs Case."

23.   Through Claridy's representative, Anderson offered to dismiss all disciplinary charges pending against Claridy, and to purge her personnel jacket of all related adverse information, if she retired. Claridy declined to do so.

24.   Since March 8, 2012, nothing has been done by Anderson or the Sheriff's Office to resolve Claridy's case.

## COUNT ONE

### (First Amendment Retaliation)

### (42 U.S.C. Section 1983)

25.   Plaintiff realleges Paragraphs 1-24 of this Complaint which are restated and incorporated under this Count One fully by reference.

26.   Claridy's political campaign and her political campaign activities, and her expressions of her views and concerns about the Sheriff's Office, were expressions of free speech on matters of public concern protected by the First Amendment.

27.   Claridy had no job duty or responsibility in the expression of her views.

28.   Claridy expressed her views as a private citizen.

29.   No confidential information was disclosed by Claridy in her expressions.

30. Claridy's communications did not disrupt the Sheriff's Office.

31. Claridy's interest in First Amendment expressions as a citizen outweighed any disruptions or disruptive effects the expressions may have created.

32. The administrative disciplinary actions complained of were the direct and proximate cause of the adverse employment actions against Claridy, and injuries and damages to Claridy.

33. Under color of state law, Anderson retaliated against Claridy for exercising her First Amendment rights to run for political office by the administrative disciplinary actions taken against her.

34. Under color of state law, Anderson violated Claridy's First Amendment rights to express herself on matters of public concern as a private citizen by the administrative disciplinary actions taken against her.

35. Anderson violated First Amendment rights clearly established under law.

36. Anderson's actions were no more than a pretext to adversely affect Claridy's employment in violation of Claridy's First Amendment rights.

37. Anderson's actions were ultra vires, and outside the scope of his employment.

### RELIEF

WHEREFORE Plaintiff prays that this Court enter Judgment in her favor:

A. Entering a money judgment against Defendant in his personal capacity in favor of Plaintiff for economic and non-economic damages incurred by Plaintiff including but not limited to the humiliation, stress, mental anguish, embarrassment and loss of enjoyment of life suffered by Plaintiff in an amount not less than $2,500,000.00;

**B.** Entering injunctive relief restoring Plaintiff to her full time duties as a sworn deputy sheriff;

**C.** Entering injunctive relief restoring Plaintiff's police powers;

**D.** Entering injunctive relief dismissing all administrative disciplinary charges filed against Plaintiff covered by this suit;

**E.** Entering injunctive relief purging Plaintiff's personnel file of all information pertaining to the charges;

**F.** Entering a money judgment against Defendant in his personnel capacity in favor of Plaintiff for punitive damages in an amount not less than $2,500,000.00;

**G.** Awarding Plaintiff her reasonable costs and attorney's fees in this action; and,

**H.** Granting such other and further relief as may be deemed just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully requests a trial by jury.

**Respectfully Submitted**

*/S/ Neal M. Janey*

_____
**Neal M. Janey, Esquire**
**Federal Bar No. 02285**
**12 W. Montgomery Street, #200**
**Baltimore, Maryland 21230**
**Telephone: 410-340-6616**
**Facsimile: 410-752-2579**
**Email: nealjaneylaw@aol.com**

**Attorney for Plaintiff**