**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DEBORAH CLARIDY,                    *

     *Plaintiff*                          *

     v.                                 *          Civil No.: **1:13-cv-02600-ELH**

JOHN ANDERSON,                      *

     *Defendant*                         *

_____

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT JOHN ANDERSON'S MOTION TO DISMISS**

COMES NOW, the Defendant, John Anderson, by and through his undersigned counsel, and moves to dismiss Plaintiff's Complaint, and submits the following Memorandum of Law In Support of Defendant John Anderson's Motion to Dismiss:

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Deborah Claridy ("Claridy"), a Deputy Sheriff Lieutenant with the Baltimore City Sheriff's Office, has sued the Defendant, Baltimore City Sheriff John Anderson ("Anderson"), in his individual capacity, for allegedly retaliating against her in violation of her First Amendment rights subsequent to her unsuccessful campaign for Sheriff.

In September 2010, Claridy unsuccessfully attempted to unseat Anderson in the primary election for Sheriff of Baltimore. *See* Complaint ¶15. Upon returning to work

2

after the election, Anderson reassigned Claridy to administrative duties within the courthouse.  *See* Complaint ¶16.  However, Claridy maintained her same rank, grade, and pay.  In May 2011, Claridy was suspended and administratively charged with seventeen (17) violations of agency policy.  *See* Complaint ¶18.  The charges related to misconduct during her campaign, including the misuse of her uniform, publicly disparaging the Sheriff's Office, and failing to perform the duties of her new assignment.  *See id*.  In August 2011, the charges were dismissed.  *See* Complaint ¶19.

In September 2011, Claridy was served with six new charges, which included the prior charges and included an additional period of time for which she was alleged to have failed to perform her duties.  *See* Complaint ¶20.  In March 2012, Anderson ordered Claridy to return to work, though the charges had not been resolved.  *See* Complaint ¶21. No action was taken subsequent to March 2012 with respect to the charges.  *See* Complaint ¶24.

However, on April 16, 2013, Claridy was charged with various administrative offenses regarding her failure to report for duty on October 29 and 30, 2012, as well as her destruction of a sick leave slip on April 16, 2013. *See* Exhibit 2 (Memorandum Opinion of the Honorable Pamela White, Circuit Court for Baltimore City).  Claridy was charged with a total of ten violations, including unsatisfactory performance, failing to report for duty as required, failing to obey a lawful order, insubordination, and violation of agency policy with respect to sick leave.  *Id*.  None of those charges relate to those

3

complained of in Claridy's Complaint in this case, nor does Plaintiff allege that she was unlawfully retaliated against with regard to those charges.

Claridy was ultimately found guilty of the majority of those charges and was terminated.  *Id.*  Claridy filed a Petition for Judicial Review to the Circuit Court for Baltimore City, and after briefing and oral argument the court affirmed the trial board's findings and upheld Claridy's termination. *Id.*

Claridy's Complaint should be dismissed because (1) the Complaint fails to state a claim upon which relief may be granted, and (2) Anderson is entitled to qualified immunity as a matter of law.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1037, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 129 S. Ct. at 1949.  To that end, the complaint must not only allege that the plaintiff is entitled to the requested relief, but must actually "show" that the plaintiff is entitled to the requested relief.   *Ashcroft*, 129 S. Ct. at 1950 (citing

4

Fed. R. Civ. P. 8(a)(2)).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft*, 129 S. Ct. at 1949.  In this regard, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

When ruling on a motion under Fed. R. Civ. P. 12(b)(6), "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).  Nevertheless, it is insufficient that the well-pleaded facts create "the mere possibility of misconduct." *Ashcroft*, 129 S. Ct. at 1950.  Simply put, "[l]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) (citing *Ashcroft*, 129 S.Ct. at 1949).

A "complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "across the line from conceivable to plausible." *Ashcroft*, at 1952 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570).

## III.   LEGAL ANALYSIS

### A.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

To prevail on her First Amendment retaliation claim, Claridy must demonstrate that (1) she engaged in a protected First Amendment activity, (2) that Anderson took action that adversely affected her First Amendment rights, and (3) that there was a causal relationship between her protected activity and Anderson's conduct. *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331 (D. Md. 2011).

Among the factors courts are to consider in evaluating such a claim is first, whether the plaintiff spoke as a citizen on a matter of public concern. *Id*.  Here, Claridy spoke as an agency official.

### 1.   Claridy Spoke as a Deputy Sheriff Lieutenant

Claridy's complaint makes clear that she was speaking not as a private citizen, but rather as a Deputy Sheriff Lieutenant with the Baltimore City Sheriff's Office.  At the time of the 2010 election, Claridy was the "highest ranking female sworn deputy sheriff," who "supervised an administrative staff" and "reported to the Chief Deputy Sheriff who is the second in command of the office."  *See* Complaint ¶ 9.  Moreover, Claridy spoke about

6

(a)    The need for the Sheriff to recruit and hire more minorities;

(b)    The need for the Sheriff to promote more women to supervisory and management positions;

(c)    The need for the Sheriff to seek funding to expand the capacity of the office to become the principal intake agency for domestic violence cases;

(d)    The need for the Sheriff to increase courtroom security staffing;

(e)    The need for the Sheriff to seek increased funding for training;

(f)    The need for the Sheriff to seek foreclosure legislation;

(g)    The need for the Sheriff to upgrade and improve courthouse technology; and

(h)    The need for the Sheriff to reduce overtime costs.

*See* Complaint ¶ 11(a)-(h).  Claridy utilized photos of herself in uniform and identified herself as a Deputy Sheriff Lieutenant, not a private citizen. Moreover, she relied extensively on her position within the agency to critique and criticize the Sheriff, other deputies, and the agency as a whole.  As a result, Claridy may not enjoy the First Amendment protection that she seeks here. *See Connick v. Myers*, 461 U.S. 138 (1983) ("[t]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs").

Claridy possessed a unique insight into the Sheriff's Office based solely on her position, and was only able to discuss the issues she identified in her Complaint because of her official position as a Deputy Sheriff Lieutenant with the agency.  In fact, Claridy

was one of only six (6) deputy sheriff lieutenants the sheriff was even authorized by law to appoint.  *See* Md. Code Ann., Cts. & Jud. Proc. Art. § 2-309(d)(1)(ii).

As such, this court may find that she did not speak as a citizen on matters of public concern.  Rather, she spoke as a Deputy Sheriff Lieutenant who was running for office. As the Complaint exhibits show, six of her administrative charges state that she "appeared on a local radio show, **acknowledged that [she was] a Lieutenant employed with the Baltimore City Sheriff's Office**, and criticized the agency, the Sheriff and other deputies in the Sheriff's Office."  *See* Plaintiff's Complaint Exhibit pp. 8-13 (emphasis added).

### 2.      The Sheriff's Office's Interests Outweigh Claridy's

Next, even if the Court were to find that Claridy spoke as a private citizen on matters of public concern, and not a Deputy Sheriff Lieutenant during her campaign, the court must next examine "whether the employee's interest in the speech was outweighed by the employer's 'interest in the effective and efficient fulfillment of its responsibilities to the public.'"  *Joyner v. Lancaster*, 815 F.2d 20, 23 (4th Cir. 1987) (citation omitted). Here, her Complaint still fails to state a claim because the Sheriff's Office's interest in fulfilling its mission outweighed Claridy's interest in promoting her own campaign.

Notably, "[a] public employee enjoys "substantially less First Amendment protection" where the employee has a "confidential, policymaking, or a public contact role and speaks out in a manner that interferes with or undermines the operation of the

agency, its mission, or its public confidence." *McVey v. Stacy*, 157 F.3d 271, 278 (4th Cir. 2006).   Further, the *Joyner* Court noted the "many variables" in its analysis, including that "speech in the public interest by a public spirited citizen is entitled to greater protection **than speech in the interest of the speaker** or of another whose cause the speaker advocates."   *Id*. at 23 (emphasis added).   Here, without question, Claridy spoke to benefit herself and her campaign for Sheriff.   Moreover, Claridy's speech "interfere[d] with or undermine[d] the operation of the agency, its mission, or its public confidence," so much so that the agency felt it necessary to file administrative charges against her. *McVey, supra*.

This balancing is a question of law for the court.  *Id*.  Here, Claridy's expression was in furtherance of her personal concern (her campaign), and thus, "the public employer's burden of showing the predominance of the public's interest in continuing the efficient functioning of a public entity is lessened."  *Id*. at 24.  Claridy's administrative charges make clear that the Sheriff's Office believed that her speech undermined its mission.  *See* Plaintiff's Complaint Exhibits at pp. 8-13.  Claridy "ma[d]e allegations of wrongdoing and corruption by the Sheriff and certain deputies that were without factual basis and were made primarily, if not solely, **to advance [her] campaign for Sheriff**." *Id*. (emphasis added).  Such conduct unquestionably undermined the Sheriff's Office.

The Fourth Circuit has recognized that "[s]ome agencies, such as police and fire departments, provide such essential services and depend so much on good working

9

relations within the department that we place a premium on the government's interest as we conduct the *Pickering* balancing test." *Mills v. Steger*, 64 Fed. Appx. 864, 872 (4th Cir. 2003) (emphasis added); *Cromer v. Brown*, 88 F.3d 1315, 1328 (4th Cir. 1996) (noting the wide latitude law enforcement agencies have in internal disciplinary matters).

In this respect, the balancing test weighs heavily against Claridy in this case. The court may rule as a matter of law that the Sheriff's Office (and Anderson) had a greater interest in protecting the agency from Claridy's allegations than Claridy had in her own campaign speech.

### 3. Claridy's Reassignment and Administrative Charges Were Permissible Under *Elrod-Branti*

Even assuming Claridy spoke as a citizen on matters of public concern, and that her interest in her speech outweighs Anderson's interest in maintaining the effectiveness of the Sheriff's Office, she still fails to state a claim for First Amendment retaliation because her reassignment and administrative discipline were permissible under Fourth Circuit's well-established recognition of the *Elrod-Branti* exception to the patronage dismissal rule.

Though the First Amendment generally bars patronage dismissals, the Fourth Circuit has recognized and discussed the exceptions carved out in the *Elrod-Branti* line of cases. *See Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980).

10

In *Jenkins v. Medford*, 119 F.3d 1156 (1997), the Fourth Circuit upheld the terminations of deputy sheriffs after a newly-elected sheriff would not reappoint them based on their political opposition during the election campaign. The court recognized the exception created in *Elrod* where the court would "allow[] patronage dismissals of those holding policymaking positions, reasoning that this exception would, in part, advance the important government goal of assuring 'the implementation of policies of [a] new administrative, policies presumably sanctioned by the electorate." *Id.* at 1161 (citation omitted).

In holding that North Carolina deputy sheriffs may be lawfully terminated for political patronage under the *Elrod-Branti* exception, the Fourth Circuit noted that "[d]eputy sheriffs play a special role in implementing the sheriff's policies and goals." *Id.* at 1162. In addition, "[i]n the course of their duties, deputies will 'make some decisions that actually create policy'" and that "[t]he sheriff relies on his deputies to foster public confidence in law enforcement." *Id.* "Furthermore, deputies are expected to provide the sheriff with the truthful and accurate information he needs to do his job."

Here, Claridy played that same "special role in implementing [Anderson's] policies and goals." *Id.* She was one of only six (6) appointed Deputy Sheriff Lieutenants, and had significant administrative and supervisory authority. *See* Complaint ¶, *see also* Md. Code Ann., Cts. & Jud. Proc. Art. § 2-309(d)(1)(ii) (the Baltimore Sheriff may appoint up to six (6) Deputy Sheriff Lieutenants). Further, Anderson expected

11

Claridy to "provide [him] with the truthful and accurate information he need[ed] to do his job." *Jenkins*, 119 F.3d at 1162.

The Fourth Circuit further instructed the district courts to engage in a *Stott*-type analysis where the specific position is examined to determine whether the deputy "resembles a policymaker, a communicator, or a privy to confidential information." *Id.* at 1164 (citing *Stott v. Haworth*, 916 F.2d 134 (4th Cir. 1990).

Under the *Stott* test, the court first considers "whether the plaintiff's position involves government decision making on issues where there is room for political disagreement on goals or their implementation." *Bland v. Roberts*, 730 F.3d 368, 375 (4th Cir. 2013). If it does, the court then examines "the particular responsibilities of the position to determine whether it resembles policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation (or political allegiance) is an equally appropriate requirement." *Id.*

The focus in this second step is on "the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." *Id.* As such, the Fourth Circuit focused "on the job description for the position in question and 'only look[s] past the job description where the plaintiff demonstrates some systematic unreliability.'" *Id.* Moreover, "[w]hether a particular position falls within the Elrod-

Branti exception is a question of law which may be properly determined on a motion to dismiss." *Jenkins*, 119 F.3d at 1165.

The *Bland* Court started its *Stott* analysis by recognizing that "[c]ertainly there is a legitimate disagreement over the goals and implementation of the goals of a sheriff's office; accordingly, **the outcome of the Stott test will turn on the outcome in Stott's second step**." *Id*. 376 (emphasis added).

In *Bland*, the plaintiffs' positions did not resemble Claridy's here. For example, the *Bland* Court noted that the plaintiffs never "took a law enforcement officer's oath," and that their principal functions were that of performing ministerial jailer duties. *Bland*, 730 F.3d. at 378. Moreover, they were not entrusted with broad discretion, nor were they out in the county engaging in law enforcement activities on the sheriff's behalf. *Id*.

But here, as in *Jenkins*, the Plaintiff was in a position of trust and confidence, and performed the full array of law enforcement duties, including substantial supervisory duties. Illustrative of these facts is the actual position description for a Deputy Sheriff Lieutenant, which makes clear that Claridy had a wide range of duties and responsibilities:

> A Deputy Sheriff Lieutenant is the **supervisory level of work** serving court and legal process orders of the Circuit Court of Baltimore City and the District Court of Maryland; relocating, safeguarding and escorting witnesses in the Baltimore City State's Attorney's Witness Protection Program; and **targeting violent offenders, career criminals and drug kingpins in task forces** and joint operations with Federal law enforcement authorities, Baltimore City police and other local police agencies.

13

> Employees in this classification **supervise Deputy Sheriff Sergeants**. Employees receive general supervision from a Deputy Sheriff Captain. The work requires travel throughout Baltimore City, Maryland and other states. The work may involve **contact with dangerous or hostile persons who may be armed**.

*See* Exhibit 3 (position description) (emphasis added). In addition, all deputy sheriffs in Maryland "take and subscribe [a specified] oath or affirmation, and it is in fact mandatory for each deputy to do so. *See* Md. Code Ann., Cts. & Jud. Proc. Art. § 2-104(b).

In addition, as stated above, it is significant that the Baltimore City Sheriff, by statute, may only **appoint** up to six Deputy Sheriff Lieutenants to fill his command.  *See* Md. Code Ann., Cts. & Jud. Proc. Art. § 2-309(d)(1)(ii).  Claridy, therefore, served in an **appointed** position occupied by only five (5) others in the entire agency.  She was, by her own admission, the top ranking female deputy, and reported directly to the agency's second-in-command.  *See* Complaint ¶9.

In this respect, Claridy's role was unequivocally that of a policymaker, a confidant, and a communicator.  *See Jenkins*, 119 F.3d at 1163 ("sheriffs, as elected officers, require loyal deputies to help them implement their policies – 'policies presumably sanctioned by the electorate.").  In fact, "[t]he circuits which have examined the interplay between the voters, the sheriff and his policies, and the role of deputies in implementation of policy, have concluded that political affiliation and loyalty to the sheriff are appropriate job requirements."   *Id*.

14

The Fourth Circuit in *Jenkins* went on to examine the role of the deputies in North Carolina, and concluded that because "the office of deputy sheriff is that of a policymaker, and that deputy sheriffs are the alter ego of the sheriff generally, for whose conduct he is liable." *Id*. at 1164. The Fourth Circuit held, as a result, that "**[b]ecause they campaigned for Medford's opponents, the deputies in the instant case had no constitutional right to continued employment after the election, and so have failed to state a claim under 42 U.S.C. § 1983**." *Id*. (emphasis added).[1]  In fact, the court could "think of no clearer way for a deputy to demonstrate opposition to a candidate for sheriff, and thus actual or potential disloyalty once the candidate takes office, than to actively campaign for the candidate's opponent." *Id*. at 1164-65.  Here, Claridy did far more than campaign for Anderson's opponent – she *was* his opponent.

As such, Anderson permissibly took adverse action against Claridy based on the Fourth Circuit's adherence to the *Elrod-Branti* line of authority, since Claridy ran directly against him in the primary and openly criticized his policies and administration.  Claridy enjoyed the precise type of position and relationship as the *Jenkins* plaintiffs in North Carolina, and in fact, in this case, Claridy was of a significantly higher rank than any

---

[1]The Court took note of its prior holdings applying *Elrod-Branti* differently and stated that "[t]he intervening years and cases since [the prior cases] reveal that sheriffs have been forced to defend themselves in litigation for dismissing deputies who campaigned against them, thus diverting sheriffs' attention from the important public safety issues in their communities." *Jenkins*, 119 F.3d at 1164.

15

deputy in *Jenkins*. She supervised other deputy sheriffs, reported to the Chief Deputy, and had wide ranging authority on matters related to the agency administration, courthouse security, and criminal law enforcement. *See* Exhibit 3.

In fact, in *Joyner v. Lancaster*, 815 F.2d 20 (4th Cir. 1987), the Fourth Circuit emphasized, in upholding the termination of a high-ranking deputy who was "an essential link between the sheriff and the deputies that whom he supervised," that "**[i]n those circumstances, mutual confidence and loyalty are of great importance. <u>The combination of Joyner's vigorous campaign and his high position in the department created more than a potential for disruption; they actually created disruption which would have sufficed for his discharge if it had only reasonably been apprehended</u>**. *Id*. at 23-24 (emphasis added).

As such, any adverse action taken against Claridy was permissible, and her Complaint fails to state a claim.

### 4.    Claridy Cannot Demonstrate Causation

Though the *Elrod-Branti* line of cases contemplate patronage *dismissals*, Anderson did not terminate Claridy based on her political opposition.  Instead, her reassignment and administrative charges were the result of her violations of agency policy.  In *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331 (D Md. 2011), the court ruled that an officer's report of overtime abuse did not cause her termination, and noted that this causation requirement is "rigorous in that the protected

16

expression must have been the 'but for' cause of the adverse employment action alleged." *Id*. at 351.   Here, Claridy was disciplined because of poor job performance, the misuse of her agency uniform in campaign literature, and her defamatory remarks about the Sheriff engaging in corruption.   *See* Plaintiff's Complaint Exhibits.   She was not reassigned or charged because she opposed the Sheriff in the primary – she was reassigned and administratively charged because she engaged in misconduct.

The court made clear in *Hamilton* that where alternative explanations exist for agency action, the plaintiff bears a heavy burden in establishing the causal link to the protected speech.   *Hamilton*, 807 F. Supp. 2d. at 352.   Moreover, *Hamilton* discussed *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337 (4th Cir. 2000), where the Fourth Circuit upheld the granting of summary judgment in a First Amendment retaliation claim where it appeared that Goldstein "had violated a prior employment agreement" and there were "reasons separate and distinct from Goldstein's protected speech" justifying his termination.   *Id*. at 351-52.   Similarly here, Claridy's reassignment and administrative charges were the result of her violation of agency policies and procedures, not her political opposition.   *See* Plaintiff's Complaint Exhibits.

Accordingly, Claridy cannot establish the causation requirement.

### B.      ANDERSON IS ENTITLED TO QUALIFIED IMMUNITY

The Fourth Circuit has made clear that Anderson is entitled to qualified immunity for the actions taken against Claridy, even if the court finds under *Elrod-Branti* and its own *Stott* analysis that Anderson was mistaken and Claridy was not a political appointee.

A government official sued in his individual capacity may invoke qualified immunity, which "protects government officials from civil damages in a §1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013).  In determining a defendant's entitlement to qualified immunity, a court must decide "(1) whether the defendant has violated a constitutional right of the plaintiff and (2) whether that right was clearly established at the time of the alleged misconduct."  *Id.*

In examining the first prong of the test, the district courts have been instructed to identify the claimed right "at a high level of particularity."  *Id.* Moreover, an official's actions violate a clearly established right "only if in the light of pre-existing law, the unlawfulness of the actions is apparent." *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007).  Moreover, courts "do not require of such officials the legal knowledge culled 'by the collective hindsight of skilled lawyers and learned judges,' but instead only 'the legal knowledge of an objectively reasonable official in similar circumstances at the time of

18

the challenged conduct.'" *Id*. "Absent clearly established law that proscribe[s] [an official's] specific conduct, [he] should not be subjected to suit." *Id*.

In *Bland*, discussed above, an elected sheriff refused to reappoint certain "deputy sheriff" jailers and administrative personnel who had not supported him during his re-election campaign. *Id*. At 372-73. In holding that the sheriff was entitled to qualified immunity, the Court stated that "**a reasonable sheriff could have believed he had the right to choose not to reappoint his sworn deputies for political reasons, including speech indicating the deputies' support for the Sheriff's political opponent**." *Id*. at 391 (emphasis added).

In this case, Anderson reasonably believed that based on Claridy's conduct and her position in the agency, that he could reassign her and subject her to administrative discipline for violating agency policy. He did not terminate her employment, and did not summarily discipline her. Instead, Claridy was reassigned to a position where she maintained her same rank, grade, and compensation, and only brought administrative charges against her based on specific violations of agency policy, to include her failure to perform her new assignment.

Based on the Fourth Circuit's decisions in *Jenkins* and *Bland*, a reasonable Sheriff in Anderson's position would have believed that he was entitled to administratively discipline an employee who engaged in misconduct, and to reassign a member of his command staff as he deemed appropriate, particularly a member that he trusted and

19

communicated confidential information to.  "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).  No such bright line was transgressed here.

For this reason as well, the Complaint should be dismissed as Anderson is entitled to qualified immunity.

## IV.   CONCLUSION

The foregoing premises having been considered, Defendant John Anderson respectfully requests that this Honorable Court grant his Motion to Dismiss.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

_____/S/_____
JASON L. LEVINE
Assistant Attorney General
Federal Bar No.:16631
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland  21202
(410) 576-6388
(410) 576-6393 (fax)
jlevine@oag.state.md.us
*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 29, 2014, a copy of the foregoing Motion was served by electronic means via the Court's Case Management / Electronic Case Files (CM/ECF) system on the persons entitled to receive such notice.

In addition on May 30, 2014, I sent a copy of the foregoing Memorandum via first-class mail, postage prepaid to:

Deborah Claridy
3310 Devonshire Drive
Baltimore, MD 21215

_____/S/_____
JASON L. LEVINE
Assistant Attorney General

21