|  |  |  |
|---|---|---|
| | * | IN THE |
| IN THE MATTER | * | CIRCUIT COURT |
| OF THE PETITION OF | | |
| DEBORAH CLARIDY | * | FOR |
| | * | BALTIMORE CITY |
| | * | CASE NO.: 24-C-13-007212 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

The parties appeared before this Court, represented by counsel, on May 8, 2014 for a hearing on Petitioner Deborah Claridy's Petition for Judicial Review (1), filed on December 2, 2013. Petitioner seeks judicial review of the final decision of the Baltimore City Sheriff's Office ("Sheriff's Office), dated October 29, 2013, to terminate Petitioner's employment as a Deputy Sheriff Lieutenant. Petitioner filed a Memorandum (9) in support of her Petition on March 11, 2014, to which Respondent filed an answering Memorandum (11) on April 7, 2014. For reasons that follow, this Court will affirm the decision of the Sheriff's Office to terminate Petitioner's employment.

Petitioner's termination from employment with the Sheriff's Office arose from two separate incidents: Petitioner's failure to report for duty during a weather emergency (Superstorm Sandy) on October 29 and 30, 2012, and Petitioner's alleged insubordination involving the destruction of an unsigned doctor's note on April 16, 2013. The Sheriff's Office charged Petitioner on June 12, 2013 with ten infractions arising from those incidents,[1] and a three-member Trial Board conducted evidentiary hearings on August 21-22, 2013 and October 1,

---

[1] Arising out of the October 2012 incident, Petitioner was charged with: (1) unsatisfactory performance in failing to conform to work standards of her rank; (2) unsatisfactory performance by being absent without leave; (3) failing to report for duty as required; (4) failing to follow a lawful order; (5) unsatisfactory performance relating to the failure to conform to work standards; (6) unsatisfactory performance being absent without leave; (7) employee required to report for duty; and (8) all lawful orders shall be followed and obeyed. Regarding the April 2013 incident, Petitioner was charged with: (1) insubordination and (2) failing to ensure that the certificate of illness she submitted complied with general orders and agency policy.

2013.  Md. Code Ann. Pub. Safety §3-107.  At the hearings, the Trial Board received twenty-four exhibits and heard testimony from eight witnesses, including Petitioner's testimony on her own behalf.  The Trial Board ultimately found Petitioner guilty on eight of the ten charges.[2]  (Agency Record, item 2, Trial Board Decision and Order).  For each of the six guilty findings arising from the October 2012 charges, the Trial Board recommended that the Petitioner receive a demotion.  As to the April 2013 incident, the Trial Board determined that the insubordination charge should result in Petitioner's dismissal and that the violation of sick leave procedures warranted a one-day suspension.  On October 29, 2013, Sheriff John W. Anderson issued an Order adopting the Trial Board's recommendations and terminated Petitioner's employment with the Sheriff's Office.  (Agency Record, Items 8, 1, Order and Letter dated October 29, 2012).

Petitioner, former Lieutenant Deborah Claridy, seeks reversal of the decision of the Sheriff's Office, urging that the decision was not supported by substantial evidence in the record, was the result of an error of law, and was arbitrary and capricious.  Petitioner contends that forces outside of her control prevented her from reporting for duty on October 29 and 30, 2012 and that she complied with all of the sick leave procedures regarding the April 2013 incident.  Petitioner argues that the Sheriff's Office improperly considered matters in her Internal Affairs file and also deviated from the General Disciplinary Matrix by terminating her for a single incident of insubordination and, thus, the dismissal was arbitrary and capricious.  Respondent Sheriff's Office urges that the Board gave careful consideration to the disciplinary issues presented by Petitioner's conduct over three days of hearings.  Respondent contends that substantial evidence was presented to support the factual and legal conclusions of the Trial Board, as adopted by the Sheriff.  Respondent also urges that the penalty decisions were well

---

[2] As to the October 2012 incident, Petitioner was found guilty on all charges except charges 1 and 5.  The Trial Board found Petitioner guilty of both charges arising out of the April 2013 incident.  The Trial Board Decision and Order appears as Item 2 in the Agency Record filed in this case.

within the discretion of the agency, and that the Disciplinary Matrix is not a mandatory standard for the Office in any event.

Petitioner seeks review of the Sheriff's Office decision pursuant to Md. Code Ann., Pub Safety § 3-109.   On a petition for judicial review of a decision under the Law Enforcement Officers' Bill of Rights ("LEOBR"), Md. Code Ann., Pub. Safety § 3-101, *et seq.*, the scope of judicial review mirrors the standard generally applicable to other administrative appeals.   Md. Code Ann. Pub. Safety § 3-109 (a).   *Coleman v. Anne Arundel County Police Dept.*, 369 Md. 108, 121 (2002).   Thus, the reviewing court "shall determine (1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." *Baltimore Lutheran High Sch. Ass'n, Inc. v. Employment Sec. Admin.*, 302 Md. 649, 662 (1985). "Substantial evidence" to uphold the factual findings of an administrative agency has been traditionally defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Anderson v. Department of Public Safety,* 330 Md. 187, 213 (1993).   Any inference to be drawn from the facts also is left to the agency.   It is "the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inference." *Baltimore Lutheran*, 302 Md. 649, 663 (1985).

Over the course of the three hearing dates, twenty six exhibits were introduced, comprised of two board exhibits, fifteen prosecution exhibits, and nine defense exhibits.   The Trial Board also heard testimony from Major William Matthews, Major Samuel Cogen, Deputy Daniel Jackson, Captain Therman Reed, Tanya McFadden, Petitioner Claridy, Major Earline Ward, and Deputy Bernard White.[3]

---

[3] The Sheriff's Office Disciplinary Matrix was referenced during the hearing(s) and closing arguments but not marked as an exhibit.  This Court held its hearing record open, after May 8, 2014, to receive and review the "General Disciplinary Matrix" now marked as Court Exhibit 1 in the Court file.

The October 2012 incidents concern Petitioner's failure to appear for work due to complications arising from the effects of Hurricane Sandy.  Petitioner contends that her personal vehicle stopped working on Friday, October 26, 2012.  Therefore, Petitioner urges that she was forced to rely on public transportation or rides from fellow officers to get to work on October 29 and 30, 2012.  Because public transportation was suspended due to the storm and because she did not receive a ride from other officers, Petitioner urges that her absences on October 29 and 30, 2012 should not have resulted in discipline; rather, Petitioner contends that she should have been granted emergency administrative leave, especially as she had been serving only in a clerical capacity.  Petitioner urges that several other officers had received transportation by fellow officers, but that the Office rebuked Petitioner's requests for transportation and for administrative leave when she called in on those days to report her inability to appear for work.

The Board determined that Petitioner failed to report to work on the days at issue without leave, in violation of general orders by her superiors.  In support of their findings, the Board relied on Petitioner's own testimony at the hearing (T. 8/22/2013 at 18-19)[4] and in a statement to the Internal Affairs Division (R. tab 5 at A-12), where Petitioner admitted that on Friday October 26, 2012, her superior, Major Cogen, advised Petitioner and other officers via email to report to work on Monday October 29, 2012, regardless of any facility closures resulting from the impending storm.  Major Cogen testified to Petitioner's specific chain of command, and that leave requests would go to Major Cogen, then to Major Matthews and finally to Chief Martin. (T. 8/21/2013 at 80).  The Trial Board found that there was no credible evidence to suggest that Petitioner was granted leave or that the Office excused her absence on October 29, relying on the testimony of Captain Reed (T. 8/21/2013 at 259) and Major Cogen (T. 8/21/2013 at 93-94).

[4] The hearing transcripts for August 21-22, 2013 and October 1, 2013 in Item 7 of the agency Record; the August 22, 2013 Transcript includes Lt. Claridy's testimony at pages 1-123.

Both Captain Reed and Major Cogen testified that Petitioner was not granted leave and was directed to appear as ordered.

Likewise, the Trial Board found that Petitioner failed to attend work without authorized leave on October 30.  The Trial Board cited Petitioner's pre-hearing statement to Internal Affairs, (R. tab 5 at A-12) where Petitioner admitted that she was ordered to work on October 30 and noted that there was no evidence provided that could excuse Petitioner's absence on that day. Major Cogen (T. 8/21/2013 at 96-99) and Petitioner (R. tab 5 at A-12) both acknowledged that Sergeant Gruzs contacted Petitioner (on Major Cogen's behalf) to inform Petitioner that she needed to attend work on October 30, regardless of the weather.  It was undisputed that Petitioner did not come to work on October 30.  Because the orders to arrive for work were never rescinded, the Board determined that Petitioner violated Sheriff's Office policy by failing to attend work without leave authorization and for disregarding a superior's order.

Petitioner urges that it was impossible for her to come to work on those days due to her transportation issues.  Petitioner objects that other officers were provided transportation, but she was not afforded similar assistance.  Petitioner argues that she requested leave after it became clear that she could not come to work, and that her absence was due to forces outside of her control.  Petitioner's arguments, however, fail to demonstrate a right to relief on judicial review. Petitioner urges that the decision is unfair; however, Petitioner's testimony, coupled with her supervisor's statements, demonstrate that Petitioner failed to comply with her orders and failed to take any proactive steps to ensure her attendance at work.[5]  Petitioner, by her own admission,

---

[5] Lt. Claridy testified, first, as to her circumstances on October 29, 2012:

1   When did that happen?  How did that
2   work?
3       LIEUTENANT CLARIDY:
4           Well, when I woke up and somebody
5   called me and was saying that, you know, the
6   storm was coming and the office was closed,

7  you know, calling.
8        I called – the first thing I do was
9  I called (inaudible) to let them know that I
10 didn't have a ride because my vehicle was
11 down, assuming that someone would give me a
12 ride.
13        I mean, we've done it in the past,
14 it has never been a problem.  I just thought
15 they would say okay, we'll get somebody to
16 pick you up.
                        ***
13   MS. GALLOWAY-DAVIS:
14        So you said you got up Monday
15 morning and learned the courts were closed.
16 How did you come to learn that the
17 transportation, the MTA was down?
18   LIEUTENANT CLARIDY:
19        I heard it on the news.
(T. August 22, 2013 at pp. 31, lines 3-16; p. 32, lines 13-19).
Lt. Claridy also testified as to her circumstances on October 30, 2012:
1        Okay.
2   MS. GALLOWAY-DAVIS:
3        Obviously you didn't have your car
4  back on that morning, is that correct?
5   LIEUTENANT CLARIDY:
6        No, I did not.
7   MS. GALLOWAY-DAVIS:
8        Okay.  And what, if any, efforts did
9  You make to be able to go to work on the
10 [30th].
16   LIEUTENANT CLARIDY:
17        I mean, the 30th.  I got up that
18 morning and I also called.  I watched the
19 news during the day and saw what was going
20 on with the emergency situation. ***
1        …I called the office again and I
2  spoke to Captain Reed.
3        I explained the siltation [sic] to him.
4  At that time, that morning he said well
5  maybe – we'll talk in a little while, and
6  then he told me to call back and that he
7  would relay the message to Major Cogen.
8        I called back, Major [C]ogen still
9  wasn't available.  Captain Reed told me that
10 maybe I should consider trying to catch a
11 cab, which I didn't even think of.
12        Then I said, okay, fine.  So what I
13 did is I called the cab company but when I
14 called the cab company, I didn't know that
15 they weren't servicing or they couldn't
16 drive or they weren't picking people up.
17        That's what I was told by the cab
18 company, that they weren't able to pick me
19 up until after 12 noon they would be able to
20 resume their services, but they already had

knew several days in advance of October 29 that she was expected to attend work regardless of the weather-related circumstances.   Beginning on October 26, Petitioner had ample time to prepare for the storm and for any transportation issues, yet waited until well after she was due to report, on October 29, to contact the office.   Petitioner's own explanations for failing to report suggest a failure to plan for storm consequences and a pattern of mere reaction to belated difficulties with alternative transportation.   Petitioner fails to demonstrate that the Sheriff's Office had any obligation to provide Petitioner transportation; rather, it was Petitioner's own responsibility to arrive for work as ordered.   The Trial Board reasonably concluded that Lt. Claridy had been repeatedly reminded "that is was her responsibility to get to work."   The Trial Board's decision regarding the October 29-30, 2012 absences was supported by substantial evidence and is affirmed.

Regarding alleged insubordination, the parties dispute the events that occurred on April 16, 2013.   The Trial Board determined that Petitioner was on approved sick leave for April 12, 2013, and returned to work on April 16, 2013.   The Trial Board found that Petitioner provided a doctor's note to Major Matthews, who then provided the note to Major Cogen, Petitioner's direct superior.   The doctor's note was not signed and did not conform to the Sheriff's Office's policy for such notes, leading Major Cogen to return the note to Petitioner.   However, Major Cogen had returned to Petitioner's office to retrieve and copy the note, when Petitioner refused Major Cogen's orders several times, and refused, again, after Major Cogen brought witnesses to

---

21 a waiting list and there was no guarantee
22 that I could get on the waiting list and be
23 picked up.      ***
8      MS. GALLOWAY-DAVIS:
9        Did you ask to be put on the waiting
10 list for the cab company?
11    LIEUTENANT CLARIDY:
12        At that time no, I didn't.
(T. August 22, 2013 at p. 51, lines 2-10, 16-20; page 52, lines 1-23; page 53, lines 8-12).

observe his exchange with Petitioner.  Petitioner did not return the unsigned note until after she placed the torn pieces of the note into a used coffee cup.[6]  The Trial Board found that the defiant destruction of the note and the repeated refusals to relinquish the note amounted to an act of insubordination.  The Trial Board relied on Major Cogen's testimony (T. 8/21/2013 at 105-112), Major Matthews' testimony (T. 8/21/2013 at 33-37), witness Tanya McFadden's "95 Report" (R. tab 5 at A-15) and Deputy Shifaraw's administrative report (R. tab 5 at A-11) in reaching the conclusion that Petitioner's actions, as they unfolded in that manner, were insubordinate, and violated the Sheriff's Office's sick-leave policy.

Petitioner disputes the characterization of the events, urging that she tore up the note to destroy it, after it was returned, as a means of protecting her privacy.  Petitioner denies acting in an insubordinate manner.  Petitioner's dispute of the Trial Board's finding, however, does not warrant a right to relief on judicial review.  The Trial Board relied on the testimony of several witnesses, and reports filed by other witnesses, all of which support the Trial Board's finding that Petitioner refused Major Cogen's orders, and that she returned the note after tearing it and placing it inside a coffee cup.  Given the narrow scope of review on a petition for judicial review, Petitioner has failed to demonstrate that the Trial Board's decision lacked substantial evidentiary support.  Thus, because the failure to produce a signed doctor's note violated agency policy and the refusal to obey an order by a superior amounted to a clear act of insubordination, the Trial Board's determination is affirmed.

Petitioner argues that the punishment recommended by the Trial Board is arbitrary and capricious, citing her lack of prior incidents of insubordination.  Petitioner urges that the

---

[6] The Trial Board's findings of fact detail an extended sequence of return visits by Major Cogen to Lt. Claridy's office to address and retrieve the note.  Lt. Claridy repeatedly refused to give the note to Major Cogen, then tore the note, then refused Major Cogen's demand, then "gave Major Cogen a cup containing coffee and the note which she had torn to pieces and put in the coffee cup."

Disciplinary Matrix[7] used in the Sheriff's Office provides that termination is the most severe of several stages of punishment for acts of insubordination. Thus, Petitioner contends that the Trial Board acted arbitrarily by exceeding the recommended punishment for Petitioner's first documented act of insubordination.  Petitioner also contends that the Trial Board wrongfully relied on adverse materials in Petitioner's Internal Affairs ("IA") file, in contravention to the Law Enforcement Officer's Bill of Rights.

Administrative agencies are afforded great deference in determining sanctions of its own employees.  When a sanction is lawful and authorized, a reviewing court is constrained to overturn a sanction only if it arbitrary and capricious.  *Maryland Aviation Admin. v. Noland*, 386 Md. 556, 575-76 (2005).  This Court finds no support Petitioner's contentions that the Trial Board acted arbitrarily and capriciously, or in any unlawful manner.  Regarding the Disciplinary Matrix, by its express terms, the disciplinary matrix is a guideline, with the Sheriff holding the final authority for punishment decisions.  *See also* Md. Code Ann., Pub. Safety § 3-108(d). While termination is not the recommended punishment under the matrix for a first offense, it is a lawful option.  While Petitioner disagrees with the choice of the sanction, the Sheriff's Office did not act unlawfully in opting to terminate Petitioner for her insubordinate conduct.  Further, Petitioner has failed to demonstrate that termination would be an extreme or egregious sanction. *See Board of Physician Quality Assurance v. Mullan,* 381 Md. 157, 171 (2004) ("The arbitrary or capricious standard, as we have stated before, sets a high bar for judicial intervention, meaning the agency action must be "extreme and egregious" to warrant judicial reversal under that standard.").  Rather, evidence was presented below that Lt. Claridy, a twenty-three year veteran of the Sheriff's Office, refused direct orders of a supervisor.  Such conduct, especially by

---

[7] While referenced during the hearings and provided to the Trial Board (T. 10/1/2013 at 54), the "disciplinary matrix" was not included in the administrative record.  Accordingly, Respondents provided a copy of the matrix on May 12, 2014, now marked in the Court file as Court Exhibit 1.

an experienced employee, runs the risk of undermining the authority of the Sheriff's Office commanders.  Given the nature of the Sheriff's Office's duties, it is reasonable that the Office would take pains to ensure that all employees recognize the importance of the chain of command.  Thus, the decision to terminate Lt. Claridy for her clear act of insubordination is not extreme or egregious, but reasonable, and well within the discretion of the Sheriff in light of the need to maintain order within the ranks.

Petitioner's claim that the decision to terminate was unlawful is likewise without merit. Petitioner opposes the consideration of any IA files which purportedly contains uncharged matters.  However, Petitioner fails to cite any aspect of the Trial Board's findings which demonstrate any reference or reliance by the Board to any aspect of Petitioner's IA file.  (See October 1, 2013 hearing Transcript at pp. 155-156).  The Trial Board did not indicate any reliance on Petitioner's IA file in its factual or legal conclusions, nor were the contents of the file entered into the administrative record.  Accordingly, there is no support for Petitioner's allegation and the argument provides no basis upon which to disturb the decision below.

## **ORDER**

Upon consideration of Petitioner Deborah Claridy's Petition for Judicial Review (1), the parties' Memoranda, the arguments of counsel at the May 8, 2014 hearing, the Court's file and applicable authority, it is on this 21st day of May, 2014, hereby

**ORDERED** that the decision of the Baltimore City Sheriff's Office dated October 29, 2013 is **AFFIRMED** and that Petitioner Claridy's Petition for Judicial Review (1) is **DISMISSED**.  The parties shall bear their own costs.

> *Judge Pamela J. White*
> Judge's Signature Appears on Original Document

**Pamela J. White, Judge, Part 7**
**Circuit Court for Baltimore City**